UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-515-H

PAPA JOHN'S INTERNATIONAL, INC.                                            PLAINTIFFS

V.

SPECKTACULAR PIZZA, INC., ET AL                                             DEFENDANT

**MEMORANDUM OPINION**

The complaint of Papa John's International, Inc. ("Papa John's"), claims trademark infringement, violation of the Trade Secrets Act and breach of contract against Specktacular Pizza, Inc. ("SPI"), a Papa John's franchisee in Pennsylvania. More immediately, it moves for a preliminary injunction to stop SPI's use of the PAPA JOHN'S trademark and trade secrets. This would effectively put SPI out of the pizza business. The Court has held an evidentiary hearing and now considers the pending motion.

I.

The Court makes the following factual findings. Papa John's owns a proprietary system for the retail sale of pizza and related food products operated to assist corporate-owned stores and franchisees selling its products. In its business, Papa John's has registered numerous trademarks ("PAPA JOHN'S Marks") to identify its franchise operations, restaurant services and related food products with the United States Patent and Trademark Office. Since 1984, Papa John's and its predecessors in interest have used the mark PAPA JOHN'S continually

throughout the United States.

On November 4, 1998, SPI entered into a franchise agreement ("1998 Franchise Agreement") with Papa John's. Pursuant to the agreement, SPI opened a Papa John's franchised restaurant in Somerset, Pennsylvania. On May 8, 1999, SPI entered into a second franchise agreement ("1999 Franchise Agreement") and opened a Papa John's franchised restaurant in Bedford, Pennsylvania. SPI has operated both these stores continuously ever since.

The 1998 and 1999 Franchise Agreements provided SPI a non-exclusive license to use the PAPA JOHN'S Marks and other elements of the proprietary Papa John's franchise system. The Franchise Agreements further direct that, if those agreements were terminated, SPI: (1) would not thereafter hold itself out as a Papa John's franchisee; (2) would immediately and permanently cease using the PAPA JOHN'S Marks and all other elements of the Papa John's proprietary franchise system; (3) would immediately return to Papa John's, or destroy, all Papa John's signs, advertising and display bearing the PAPA JOHN'S Marks; and (4) would immediately deliver to Papa John's all manuals, policy and procedure statements, instructions and other materials related to operating the SPI restaurants, including Papa John's proprietary software.

The 1998 and 1999 Franchise Agreements allowed Papa John's, in its sole discretion, to designate a geographical area for the purpose of establishing a regional advertising cooperative. Once such a cooperative was established, Papa John's could require each of SPI's stores to contribute to the cooperative on the terms set forth in the Franchise Agreements or as agreed to by the cooperative's members. The applicable portions of the Franchise Agreements state as follows:

>    **(c)    Regional Cooperative Advertising**: You [franchisee] agree that we [Papa John's] shall have the right, in our sole discretion, to designate from time to time a geographical area in which the Restaurant is located for the purpose of establishing an advertising cooperative ("The Cooperative").  If a Cooperative has been established applicable to the Restaurant at the time you commence operations, you shall immediately become a member of such Cooperative.  If a Cooperative applicable to the Restaurant is established at any later time during the Term, you shall become a member of such Cooperative no later than 30 days after the date on which the Cooperative commences operation.  In no event shall the Restaurant be required to contribute to more than one Cooperative.  We may designate, from time to time, a formula for calculating a proration or reduction of the contribution rate for restaurants in a Cooperative based on media coverage, demographics or other factors.  The following provisions shall apply to each Cooperative.
>
>    (i)    Each Cooperative shall be organized and governed in a form and manner, and shall commence operation on a date, that we designate in advance in writing.  On all matters to be voted on by the Cooperative's membership, each member shall have one vote for each restaurant it owns.
>
>    (ii)    Each Cooperative shall be organized for the purposes of producing and conducting general advertising programs and activities for use in and around the applicable geographic area and developing standardized promotional materials for use by the members.
>
> *****
>
>    (v)    Subject to the provisions above, each Cooperative shall have the right to require its members to make contributions to the Cooperative in such amounts as are determined by the governing body of the Cooperative.
>
>    (vi)    You shall make your contributions to the Cooperative on the date and in the manner designated by the Cooperative.  You shall also submit such statements and reports as may be designated from time to time by us or the Cooperative.  The Cooperative shall submit to us such statements and reports as we may designate from time to time.

Initially, Papa John's did not form an advertising cooperative in SPI's geographic area.  Instead, SPI and Pitts.burgers, another franchisee in the area, cooperated on an informal basis to purchase broadcast advertising.

However, in late 2000, SPI and Pitts.burgers disagreed about the amount and type of advertising necessary.  As a result, Papa John's Regional Marketing Director for the area, Mr.

Richard Wagner ("Wagner"), notified SPI and Pitts.burgers by e-mail on November 14, 2000 that, if a consensus could not be reached on the 2001 schedule, Papa John's would invoke its rights under the Franchise Agreements to form a formal franchisee advertising cooperative for their geographic area. A few weeks later, Papa John's decided to exercise its discretion and establish a formal advertising cooperative ("Cooperative") in SPI's geographic area. Papa John's e-mailed both SPI and Pitts.burgers of its intention to form the Cooperative.

The Cooperative held its first meeting on January 25, 2001. It is not clear that SPI received notice of the meeting. The notes of that first meeting indicate that "the Co-op has been officially formed with December sales and January contributions." SPI did not receive further notice of the Cooperative for over a year. At that time SPI received a statement for its share of advertising services. SPI asserted that it should not be required to pay the required contribution rate and it refused to pay any of the fees. SPI continued to deny the existence of the Cooperative in correspondence with Papa John's executives.

Beginning in November of 2002, Papa John's sent a string of correspondence and letters. SPI has declined to pay any advertising fees to the Cooperative. Papa John's sent SPI written notice of breach on four occasions, providing fifteen days to cure in each instance as required by the Agreements. Papa John's sent its last notice of breach to SPI on July 27, 2005. At that time, SPI was allegedly indebted to the Cooperative for approximately $90,784.63 and SPI refused to pay. As a result, Papa John's terminated SPI's Franchise Agreements.

Despite receiving the termination letter, SPI continues to operate both of its pizza stores using various PAPA JOHN'S Marks and trade secrets. It is also selling food products that are not authorized under the Papa John's Franchise Agreements. Accordingly, Papa John's has

moved for a preliminary injunction under the Lanham Act.

## II.

The Sixth Circuit has set forth four criteria that district courts must consider in granting or denying a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998). Although each factor must be given a "realistic appraisal," none is singly dispositive. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985).

Papa John's likelihood of success in its claim for injunctive relief depends on the language of the Lanham Act. *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003). Section 1114(1)(a) of the Lanham Act provides, in relevant part, as follows:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). Thus, to prevail on its trademark infringement claim, Papa John's must show that its trademark was used in commerce by SPI without the Papa John's consent, and that the use was likely to deceive, cause confusion, or result in mistake. *Taubman Co.,* 319 F.3d at 774.

A.

No one disputes that Papa John's is the owner of the PAPA JOHN'S Marks and that SPI's use of the name and marks will confuse the public as to the source, origin, sponsorship, or affiliation of SPI's goods. *See, e.g., S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (finding that there is a considerable likelihood of confusion when an infringer uses the exact trademark as the plaintiff's). The issue in dispute is whether SPI is using Papa John's name and marks without Papa John's consent.

SPI argues that it is not using the trademark without consent because Papa John's wrongfully terminated the Franchise Agreements. According to SPI, the non-payment of co-op fees was an improper ground for termination because Papa John's never properly formed the Cooperative. As support for its reasoning, SPI relies on *McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998). In that case, the Eleventh Circuit held that to be entitled to a preliminary injunction under the Lanham Act, a franchisor must make "some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use." Although the Sixth Circuit has never addressed the issue, it appears that every circuit that has addressed it has adopted this same rule. *See also*, *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("Jiffy Lube will merit preliminary injunctive relief if it can adduce sufficient facts indicating that its termination of [plaintiff's] franchises was proper.").

Based on the evidence before the Court, it appears that Papa John's improperly established the Cooperative; and in doing so, it arguably breached the Franchise Agreements. The problem for SPI is that Papa John's breach did not give them the right to withhold co-op fees. "The infringement of a trademark is not a proper self-help remedy for a breach of

contract." *Green River Bottling Co. v. Green River Corp.*, 997 F.3d 359 (7th Cir. 1993). Under basic contract principles in Kentucky, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may respond to the other party's breach in one of two ways: (1) either stop performance and assume the contract is ended; or (2) continue performance and sue for damages. *See Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956) (holding that a material breach by one contracting party in an executory contract gives the other party the right to stop performance without being liable for breach); *Meador v. Robinson*, 263 S.W.2d 118, 118 (Ky. 1953) (holding that a promisor's failure to perform fully under a contract constitutes breach).[1] "Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *Jiffy Lube*, 968 F.2d at 376; *accord Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 397-98 (S.D.N.Y. 2000) ("What the non-breaching party cannot do is avoid its obligations under the contract and yet continue to reap the benefits.").

If Papa John's improperly established the Cooperative, it breached the Franchise Agreements. Accordingly, SPI could have either cancelled the contract or continued performance and sued for damages. SPI did neither. Instead, it unilaterally declined to pay a portion of the fees that Papa John's demanded. That amounted to an independent breach of the Franchise Agreement and Papa John's had the right to terminate the agreements based on that breach. Thus, Papa John's properly terminated the Franchise Agreements and has a substantial

---

[1] Although the Franchising Agreements were executed in Pennsylvania, Kentucky law governs the parties' contract disputes. The Franchising Agreements contain a forum-selection clause which states that Kentucky law shall apply to the interpretation of the contract. Because Papa John's is headquartered in Kentucky, Kentucky has a substantial relationship to the transaction and the parties; and therefore, the selection clause is enforceable. *See Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).

likelihood of success on the merits of its Lanham Act claim.[2]

B.

The Court also finds that Papa John's would suffer irreparable injury if the injunction were not issued. Since Papa John's sent SPI notice of termination, it no longer has the ability to "ensure the continued quality" of SPI's operation. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989). The resulting risk of harm is particularly evident here. While conducting business under the Papa John's name, SPI has begun using unauthorized ingredients in the pizzas it is selling to consumers. Without question, this unauthorized activity threatens injury to the goodwill and reputation of the PAPA JOHN'S Marks and puts Papa John's reputation beyond its control. See J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 23:6 (4th ed. 1996 & Supp.2005) (hereinafter "McCarthy On Trademarks"). These facts are more than sufficient to establish irreparable injury in the Sixth Circuit. *See, e.g.*, *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (where there is a showing of infringement, "no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement . . . cases").

C.

The Court does not find any harm to SPI that is sufficient to outweigh the potential harm to Papa John's. To be sure, there is a risk that SPI will be forced to close both of its two restaurants and will suffer imminent financial loss. However, SPI's harm is self-inflicted: SPI

---

[2] SPI has not pointed to any language in the agreement indicating that Papa John's duty to provide written notice of the establishment of the Cooperative was a condition precedent to SPI's duty to pay cooperative fees. Moreover, SPI has cited no cases indicating that Papa John's entitlement to a preliminary injunction would change if proper notice were a condition as opposed to a promise. Nor can he. The bulk of authority is that the remedy for a franchisee who alleges that she was wrongfully terminated is money damages, not the continued unauthorized use of the franchisor's trademarks. *See, e.g.*, *Burger King Corp. v. Hall*, 770 F. Supp. 1149 (S.D. Fla. 1991).

voluntarily declined to pay the fees demanded. Accordingly, SPI's "self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark." *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (citations omitted). Moreover, it retains a counterclaim for breach of contract and all consequent damages.

D.

The Court also finds that issuance of the injunction would serve the best interests of the public. Before Papa John's terminated the Franchise Agreement, SPI had been operating two restaurants under the Papa John's name for nearly seven years. Accordingly, the Court has every reason to believe that SPI has become associated in the public mind with Papa John's. See McCarthy On Trademarks § 23:6. Now that SPI has lost authorization yet continues to use the mark, "the potential for consumer confusion is greater than in the case of the random infringer." *Church of Scientology Intern. v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 44 (2d Cir. 1986). The continued use of the Papa John's name deceives the public into believing that SPI is still a Papa John's franchise.

III.

It may seem counter-intuitive that SPI might still have a valid contract claim, even though this Court has determined that Papa John's has a strong likelihood of success on its right to injunctive relief. The two are not mutually exclusive, however. Subsequent discovery could disclose an improper formation of the Cooperative or an improper billing. Such a disclosure would not affect the remedy sought now. Now that Papa John's has terminated the 1999

Franchise Agreement, SPI has no affirmative remedy under Kentucky to restore its franchise rights. Its only remedy is damages. Though SPI has not moved for an equitable remedy under its breach of contract claim, the Court does not believe that such a remedy is available either now or later under Kentucky law.

Based on the foregoing, the Court finds that Papa John's is entitled to a preliminary injunction. The Court will enter an order consistent with this opinion.

cc: Counsel of Record